IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| SUE BOLING, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:04-cv-572 |
| ) | |
| BRIAN BARKER and GILBERT UNION ) | |
| BOILER MORRISON KNUDSEN ) | |
| (GUBMK), ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

This civil action is before the court on the motion of defendant GUBMK for summary judgment [doc. 28]. The plaintiff has responded [doc. 36], and the defendant has filed a reply brief [doc. 40]. The defendant requested oral argument on its motion, but the court finds that oral argument is not necessary. For the reasons discussed below, this civil action must be dismissed because the plaintiff's discrimination charge was not timely filed.

In her complaint, the plaintiff alleges that she was subjected to sexual harassment by her supervisor and then she and her husband, also an employee of GUBMK, were subjected to retaliatory actions, including termination

from her employment on December 2, 2002.[1]  She alleges violations of her rights under Title VII (42 U.S.C. § 2000e-2) and the Tennessee Human Rights Act, and she brings a state law claim for negligent supervision and training.

The following facts were taken from the exhibits supplied by the parties in their briefs.  The plaintiff was re-employed by the defendant beginning in July 1999.  In December 2001 and continuing into the Spring of 2002, the plaintiff alleges that she was sexually harassed by her supervisor, Brian Barker.  The plaintiff reported the harassment to John Simonetto, Resource Manager for GUBMK, who then talked with Barker.  The allegations were adamantly denied by Barker.  In his affidavit, Simonetto says that after the plaintiff made her complaint, GUBMK wanted to interview other employees, but the plaintiff refused to allow a further investigation.  In any event, the plaintiff's duties were rearranged so she no longer reported to Barker, and efforts were made to restrict contact between the plaintiff and Barker.  The plaintiff admitted in her deposition that she had no further interaction with Barker after she reported the harassment.

The plaintiff says she began to suffer physically and mentally from her work situation, and on December 2, 2002, she began a leave of absence under the Family Medical Leave Act (FMLA).  Shortly thereafter, the plaintiff was sent a letter outlining her rights under the FMLA, including the fact that the

---

[1] As discussed below, the plaintiff alleges in her discrimination charge that her employment was terminated in December 2003.

company would continue to make contributions to her health care insurance while she was out. That leave expired in February 2003, and the plaintiff was sent another letter informing her of that fact. In that letter, the company proposed to move the plaintiff's workspace to a cubicle away from direct traffic in the office. If the plaintiff's physician would not release her to return under these conditions, the company was willing to place the plaintiff on an unpaid medical leave of absence until December 2003. Her health care insurance would continue but she would have to pay her monthly premiums. She was told that if she was not able to return to work in December 2003, her employment would be terminated, and it would be considered a resignation for medical reasons. When the plaintiff failed to return to work in December 2003 or contact the company in any way, her employment was officially terminated.

On September 1, 2004, the Tennessee Human Rights Commission received the plaintiff's charge. She alleged: "During my employment I reported sexual harassment, and in retaliation, I was retaliated against in the terms and conditions of my employment . . . . I was discharged from my position in December 2003 . . . ." She also claims that her husband suffered retaliation.[2] This civil action was filed December 1, 2004.

---

[2] Specifically, the plaintiff alleges that Barker changed a transfer form which would have brought the plaintiff's husband back to Tennessee to work. This would have occurred, however, no later than early 2002. *See* Plaintiff's affidavit, exh. 1 to doc. 36.

Notwithstanding the plaintiff's official termination in December 2003, the defendant argues that the plaintiff actually abandoned her employment in December 2002, making her discrimination charge and this lawsuit untimely. In support of this argument, the defendant has provided the court with documents that show that on December 3, 2002, one day after her FMLA leave began, the plaintiff and her husband signed a contract to buy property to start a gift shop. On December 15, 2002, she registered her business, Cranberry Hollow, LLC, with the Tennessee Secretary of State. In fact, the plaintiff admitted in her deposition that she quit her job and started working at her business in January 2003, and it required her full time efforts. The plaintiff stated in her affidavit that she and her husband invested their entire life savings in the business.

Further, after the plaintiff left her employment in December 2002, she had only two contacts with her employer in February 2003. All other efforts to communicate with the plaintiff by telephone or mail were unavailing. Based on copies of letters submitted by the plaintiff, however, it appears that plaintiff's counsel corresponded with defendant's corporate counsel in February and March 2003. Of particular interest are a March 7, 2003, letter from plaintiff's counsel and a responsive letter from defendant's corporate counsel dated March 26, 2003. In the plaintiff's letter, it is suggested that the plaintiff would return to work if given a lateral transfer with no contact with Barker. But the record shows that by this time, the plaintiff was working six days a week in her new business. The

4

letter also indicates that the plaintiff filed her discrimination charge earlier in the week. No such charge was ever received by the Tennessee Human Rights Commission.[3]

The defendant's responsive letter states that it is the company's understanding that the plaintiff does not intend to return to work in spite of GUBMK's efforts to meet her demands concerning contacts with Barker. The letter references the company's decision to place the plaintiff on medical leave for one year.

The court agrees with the defendant that the plaintiff effectively abandoned her position in December 2002. In December, the plaintiff had registered her business and purchased a building, and by March 2003, she opened Cranberry Hollow, a very successful business. The plaintiff's official termination in December 2003 was nothing more than the expiration of her unpaid medical leave. There is no indication that the plaintiff was willing to return to work then even if her demands were met.

The plaintiff had 300 days from the last discriminatory act to file a charge of discrimination with either the EEOC or the Tennessee Human Rights Commission. 42 U.S.C. § 2000e-5(e)(1). And, the plaintiff must exhaust her administrative remedies before filing suit in federal court. *See Ang v. Proctor &*

---

[3] Evidently plaintiff's counsel suggested to the Tennessee Human Rights Commission that it had a duty to inform her when they did not receive the filing. *See* Exh. 2 to doc. 40.

*Gamble Co.*, 932 F.2d 540, 545 (6th Cir. 1991). It is undisputed that any alleged acts of sexual harassment last occurred in the Spring of 2002. Thus, any sexual harassment claim would have to have been filed no later than February or March 2003. This was not done.

As to the plaintiff's retaliation claims, the plaintiff's termination was not a retaliatory discharge; it was merely the expiration of her medical leave. Any other acts of retaliation had to have occurred prior to the plaintiff leaving her employment in December 2002,[4] making her retaliation charge due no later than the end of September 2003. The plaintiff's discrimination charge, however, was received by the Tennessee Human Rights Commission on September 1, 2004, well past her 300-day window.[5]

The court finds that there is no issue remaining concerning the timeliness of the plaintiff's charge of discrimination, and the defendant's motion for summary judgment will be granted. An order reflecting this opinion will be entered.

ENTER:

        *s/ Leon Jordan*
United States District Judge

---

[4] The court notes that the plaintiff's husband was a victim of a reduction in force at GUBMK in December 2004, well after the discrimination charge was filed.

[5] Any charge of discrimination filed under the Tennessee Human Rights Act must be filed within a year after the discriminatory act ceases. Tenn. Code Ann. §§ 4-21-311(d).